CLEAR WITH COMPUTERS, LLC,

        Plaintiff,

v.

LEVI STRAUSS & CO.,

        Defendant.

Civil Action No.: 6:12-cv-948-LED

---

CLEAR WITH COMPUTERS, LLC,

        Plaintiff,

v.

NFL ENTERPRISES LLC,

        Defendant.

Civil Action No.: 6:12-cv-949-LED

---

CLEAR WITH COMPUTERS, LLC,

        Plaintiff,

v.

SPANX, INC.,

        Defendant.

Civil Action No.: 6:12-cv-950-LED

---

CLEAR WITH COMPUTERS, LLC,

        Plaintiff,

v.

MLB ADVANCED MEDIA, L.P.,

        Defendant.

Civil Action No.: 6:12-cv-951-LED

**DEFENDANT HUGO BOSS'S MOTION AND SUPPORTING BRIEF FOR JUDGMENT
ON THE PLEADINGS THAT U.S. PATENT NO. 8,266,015
IS INVALID AS INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101**

Defendant, Hugo Boss Fashions, Inc. ("Hugo Boss"), hereby moves this Court to grant

judgment on the pleadings that claims 1-4 and 10-11 of U.S. Patent 8,266,015 ("the '015 patent"

or "patent in suit") asserted by Plaintiff Clear With Computers, LLC ("CWC") in this action is

invalid as ineligible subject matter under 35 U.S.C. § 101.

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Section 101 of the Patent Act defines patentable subject matter as "any new and useful

process, machine, manufacture, or composition of matter, or any new and useful improvement

thereof." 35 U.S.C. § 101. However, the Supreme Court recently identified three areas of subject

matter that are ineligible for patenting: (1) laws of nature, (2) physical phenomena, and (3)

abstract ideas. *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010).

The asserted claims of the '015 patent are directed to the abstract idea of checking to see

if a product is available in inventory, determining what customization options are available,

preparing a list of the customization options, and presenting that list. In fact, this abstract process

has been performed for decades by human beings simply checking the backroom inventory to see

if a product and customization options for that product are available and then telling the

customer what is available. In other words, a person (such as a sales person in a shoe store) can

perform the claims as pure mental processes (such as by checking the inventory pursuant to a

customer's request to see if a particular style of shoe is available in inventory, presenting the

customer with options in size or color, and bringing those shoes out to show the customer). The

abundant case law from the Supreme Court, Federal Circuit, and district courts make clear that

such a process is not eligible for patentability.

Although the sole asserted independent claim recites a "computer system" and a "configuration engine," those terms are merely generic recitations of general purpose computers that are not tied to any particular machine, require no special programming, and provide no meaningful limit. Nor do the dependent claims' recitation of a "user interface," "remote computers," "communication network," or "Internet," confer patentability. Recent Supreme Court and Federal Circuit decisions, as well as decisions from district courts including this Court, have made clear that merely adding terms like "computer" or "Internet," or merely reciting basic functionality of any general purpose computer, does not confer patentability on an otherwise abstract idea. General purpose computers programmed in an unspecified manner cannot make these claims patent eligible under the machine-or-transformation test, nor do they provide inventive subject matter to promote the claims from mere abstract ideas.

Judgment on the pleadings in favor of Hugo Boss is warranted because the '015 patent claims the abstract idea of presenting product options to customers, subject matter that is not patent eligible. This case is ripe for such a judgment because no discovery is needed to resolve this issue of law, there are no claim construction issues that bear on whether the claims recite an unpatentable abstract idea, and the grant of judgment on the pleadings in favor of Hugo Boss would avoid unnecessary litigation and drain on the resources of the Court and the parties, including the other Defendants in this consolidated action.

## II.    STATEMENT OF THE ISSUE

Whether judgment on the pleadings should be granted that asserted claims 1-4 and 10-11 of the '015 patent are invalid as ineligible for patentability under 35 U.S.C. § 101.

## III.    BACKGROUND

CWC filed suit against Hugo Boss alleging patent infringement of U.S. Patent No. 8,266,015, titled "Inventory Sales System and Method." CWC's individual lawsuit against Hugo

Boss has been consolidated with several other lawsuits against various Defendants under the above captioned matter, *Clear With Computers, LLC v. Dick's Sporting Goods, Inc.*, Civil Action No.: 6:12-CV-00674-LED.

The '015 patent issued September 11, 2012, based upon an application filed on May 25, 2011 by Presentation Specialist Technologies, LLC. The application filed on May 25, 2011, is a continuation of Application No. 12/418,080 filed on April 3, 2009 (now U.S. Patent No. 7,974,890), which is a continuation of Application No. 08/879,070 filed on June 19, 1997 (now U.S. Patent No. 7,519,549). CWC asserts infringement against Hugo Boss of method claims 1-4 and 10-11.

Claim 1 of the '015 patent, upon which all other asserted claims depend, states:

> A method comprising: <u>receiving</u>, at a configuration engine of a computer system, a query regarding a product included in an inventory; <u>determining</u>, by the configuration engine, (i) a plurality of customization options associated with the product, and (ii) which customization options of the plurality of customization options are included in the inventory; <u>preparing</u>, by the configuration engine, a list of the customization options determined to be included in the inventory; and <u>providing</u>, by the configuration engine, the list of customization options for presentation.

'015 Patent col. 13 l. 35–47 (emphasis added).

Claim 2 requires that the customization options be "presented by way of a user interface." '015 Patent col. 13 l. 48–50. Claim 3 requires "communication to a remote computer system across a communication network." '015 Patent col. 13 l. 51–53. Claim 4 requires communication from a server to the client via the Internet. '015 Patent col. 13 l. 54–57. Claim 10 requires that the user interface be displayed on a remote computer. '015 Patent col. 14 l. 15–18. Finally,

Claim 11 requires that the user interface be displayed to a client via the Internet. '015 Patent col. 14 1. 19–22.

The specification of the '015 patent describes the alleged invention as essentially the application of computers to "an environment where selling products from an existing inventory is desired." Col. 3:38-40; *see also* col. 1:24-26 ("The speed and processing power of computers allow tasks which were previously quite time consuming to be accomplished almost instantaneously."). The specification does not describe any specific computer or programming required. Rather, the specification states that "any type of computer system" may be used in the claimed process. Col. 4:15-16.

The alleged invention further is described as being "advantageous" to replace the manual process performed by a human being where "a sales representative configures a product or service for sale by selecting a number of available features or options to generate a solution for the customer consistent with the customer's interest in the product." Col. 3:40-45. As described by the specification, the claimed computer system replaces the otherwise manual process of "allow[ing] a sales representative to review, select, and prepare a solution for the customer, which includes a particular product offered for sale by the sales representative, based on the needs and desires of the customer." Col. 6:23-27.

For example, Figure 7 of the '015 patent includes the mental steps recited in claim 1 that could be performed by a sales representative to "configure" a product for sale "by selecting" various "available features or options" to present to the customer. The highlighted steps in Figure 7 below are the ones relevant to claim 1: (a) receiving a query regarding a product in inventory; (b) determining whether there are customization options associated with the product and which

4

customization options are in inventory; (c) preparing a list of the customization options in

inventory; and (d) providing that list for presentation.[1]



FIG. 7

The '015 patent also states that the foregoing process is unlimited in its application to the

sales industry—i.e., the process is described as capable of being used in any environment "where

selling products from an existing inventory may be desired." Col. 3:38-40.

---

[1] The non-highlighted blocks in Figure 7 involve steps unrelated to and not recited in the asserted
claims.

## IV.   ARGUMENT

### A.   Applicable Legal Standards

#### 1.   Judgment On The Pleadings Is Appropriate Where There Are No Disputed Facts And Judgment On The Merits Can Be Rendered Based On The Pleadings

Under Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). In considering a Rule 12(c) motion for judgment on the pleadings, the court may look at documents attached to the complaint "because these documents thereby [become] part of [the] pleadings." *Id.* at 313, quoting *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n. 4 (5th Cir. 1998).

#### 2.   Ineligible Subject Matter Is A Threshold Question Of Law That Is Appropriately Decided Now Upon A Motion For Judgment On The Pleadings

Whether the asserted claims of the '015 patent are invalid as unpatentable subject matter is perfectly suited for resolution on a motion for judgment on the pleadings. The pleadings themselves are the threshold of litigation, and the question of invalidity under § 101 is a

"threshold inquiry" of law. *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd Bilski v. Kappos*, 130 S. Ct. 3218 (2010). Courts also frequently consider the issue of patent eligibility prior to claim construction.[2] *See Bancorp Servs. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266,1273 (Fed. Cir. 2012) (affirming invalidation of a patent under 35 U.S.C. § 101 without claim construction); *OIP Techs., Inc. v. Amazon.com, Inc.*, 2012 WL 3985118, at *5 (N.D. Cal. Sept. 11, 2012); *CyberFone Sys., LLC v. Cellco Partnership*, 885 F. Supp. 2d 710, 715 (D. Del. 2012) (granting summary judgment prior to claim construction); *Glory Licensing LLC v. Toys "R" Us, Inc.*, 2011 WL 1870591, at *4 (D.N.J. May 16, 2011) (finding patent invalid under § 101 on a 12(b)(6) motion). In fact, this Court recently granted a motion to dismiss under Fed. R. Civ. P. 12(b)(6), on the grounds that the asserted patent claims did not embody patentable subject matter under § 101. *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, No. 6:12-cv-375-LED, slip op. (E.D. Tex. Mar. 27, 2013) (Davis, J.).

This case also is especially appropriate for early resolution on a motion for judgment on the pleadings because there are no claim construction issues that have any bearing on the patent eligibility under § 101, and no discovery or facts extraneous to the pleadings are necessary to make this legal determination. *See BuySAFE, Inc. v. Google Inc.*, 2013 WL 3972261 (D. Del. July 29, 2013) (granting judgment on the pleadings that asserted patent was invalid under §101).

### B.    The Asserted Claims Of The '015 Patent Are Not Eligible For Patentability Under 35 U.S.C. § 101

In determining whether a claim is directed to eligible subject matter, courts consider the claim as a whole rather than evaluating elements separately. *Diamond v. Diehr*, 450 U.S. 175, 188 (1981). Although § 101 includes as eligible subject matter "any new and useful process,

---

[2] Claim construction is unnecessary to determine the patent eligibility of the asserted method claims of the '015 patent.

machine, manufacture, or composition of matter, or any new and useful improvement thereof," the Supreme Court has identified three areas of patent ineligibility: (1) laws of nature, (2) physical phenomena, and (3) abstract ideas. *Bilski*, 130 S. Ct. at 3225. These exceptions "are the basic tools of scientific and technological work," which should be "free to all men and reserved exclusively to none." *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). *See also Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) ("mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work"); *Le Roy v. Tatham*, 55 U.S. 156, 175 (1853) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right."). A claim is not patent-eligible where it merely recites a law of nature or abstract idea and adds additional steps that merely reflect routine, conventional activity of those who work in the field. *Mayo*, 132 S. Ct. at 1298.

### 1.     Asserted Claim 1 Fails The Machine-Or-Transformation Test

In determining whether a process patent is directed to eligible subject matter, courts look to the machine-or-transformation test as "an investigative tool." *Bilski*, 130 S. Ct. at 3227. Under this test, a process is patentable if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.* at 3225–26. The '015 patent is directed to a method for receiving a query about a product in inventory, determining whether there are customization options available in inventory, and providing a list of customization options available in inventory. The '015 patent fails both prongs of the machine-or-transformation test because its recitation of a general purpose computer (a "computer system") is not a meaningful limitation and its reorganization of product information ("customization options") does not constitute the necessary transformation. Moreover, as the case law makes clear, because the claimed method constitutes an abstract idea that can be performed manually by

a human being, it cannot be made patentable simply by involving a computer in the process to make that process go quicker.

>      a.      **The '015 Patent's Reference To A "Computer System" Is Insufficient To Indicate The Claims Are Tied To A Particular Machine Or Apparatus"**

The Federal Circuit has held that general purpose computers programmed in an unspecified manner do not satisfy the "machine" prong. *DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012). Additionally, a "computer readable medium" limitation does not make an "otherwise unpatentable method patent-eligible under § 101." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011).

In *Dealertrack*, the claims were directed to a process of receiving data, selecting data, and forwarding reply data to the initial source. 674 F.3d at 1333. The limitation "computer-aided" did not sufficiently limit the claim since it did not "specify how the computer hardware and database are specially programmed to perform the steps claimed in the patent." *Id.* Similarly, requiring an "information processor" does not meaningfully limit the scope of the claims. *Compression Tech. Solutions, LLC v. EMC Corp.*, 2013 WL 2368039 at *9 (N.D. Cal. May 29, 2013) (order granting motion for summary judgment). Even reciting elements like "a network," "devices," and "computer system" is not a meaningful limitation. *OIP Techs.*, 2012 WL 3985118 at *13 ("[M]erely identifying general machine elements does not satisfy the MOTT [machine-or-transformation test]; were that so, virtually any use of devices beyond the human body for a claimed method would satisfy the test.").

A computer may meet the machine prong only if it is "integral" to the claimed invention, meaning it performs the process in a way that a person could not. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1277–78 (Fed. Cir. 2012). Simply specifying that a computer is necessary to speed up the process is not sufficient to satisfy the machine

requirement. *Id.* at 1279 ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible."). For example, in considering a patent directed to a method for calculating GPS coordinates, the Federal Circuit found that the GPS receiver was a meaningful limitation. *SiRF Tech. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010). The claim required the receiver to actually receive a GPS signal, a step that cannot be completed by the human mind. *Id.* Similarly, a method claim for rendering halftone images of digital images was valid because it required the manipulation of specific data structures and components such as high contrast films, display devices, and printers. *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010).

The '015 patent fails the machine prong because it does not require a machine in any meaningful way. Just as the "computer" of *DealerTrack*, the "information processor" of *Compression Technologies*, and the "network," "devices," and "computer system" of *OIP Technologies* were not limitations sufficiently meaningful to satisfy the machine-or-transformation test, the "configuration engine of a computer system" is simply a general purpose computer that cannot save the asserted claims. Indeed, the '015 patent makes clear that "any type of computer system may be used." Col. 4:15-16.

Nor is the recited "computer system" "integral" to the claimed invention. Unlike *SiRF Technology*, where the patent required a GPS signal receiver, every step of the '015 patent can be completed by a human without the need for a computer. For example, a sales associate can orally receive a query from a customer regarding a product. The sales associate can then physically check the inventory, or may even have it memorized, and can respond to the customer by presenting him or her with a list of available or similar products. "[M]erely claiming a software implementation of a purely mental process that could otherwise be performed without the use of

a computer does not satisfy the machine prong of the machine-or-transformation test."

*CyberSource*, 654 F.3d at 1375.

> **b.      Generating A Data Output Based On A User's Input Is Not Sufficient To Indicate The Claims "Transform A Particular Article Into A Different State Or Thing"**

A patent that merely assembles or reorganizes data fails the transformation prong.

*CyberSource*, 654 F.3d at 1375 ("[M]ere manipulation or reorganization of data . . . does not

satisfy the transformation prong."); *see also Bancorp*, 687 F.3d at 1273 (affirming invalidity

where the claimed invention did "not transform the raw data into anything other than more data

. . . ."). For example, a patent directed to a method for processing floating-point numbers, which

involved putting a number in a new format, performing an arithmetic operation, and converting

the result, failed the transformation test because the steps involved mere manipulation of already

existing data. *Uniloc*, No. 6:12-cv-375-LED, slip op. at *5 (E.D. Tex. Mar. 27, 2013).

The '015 patent also fails the transformation prong because the claimed method simply

reorganizes data. In fact, there is even less of a transformation of data than was observed in

*Uniloc*, where the claimed method provided for converting numbers put into a new format. The

invention claimed in the patent-in-suit makes no change to any characteristic of either the

products or the inventory data. It merely identifies products that are available in inventory and

presents them to the customer. The asserted claims are not tied to any specific machine in any

meaningful way and do not involve the transformation of any article. Accordingly, the asserted

claims fail the machine-or-transformation test.

> **2.      Claim 1's Steps Can Be Performed As Mental Processes And, Therefore, Constitute Mere Abstract Ideas**

The asserted claims are unpatentable abstract ideas because they claim the broad concept

of checking the availability of a customizable product and presenting the customer with a list of

acceptable products, which can simply be done through the mental work of a sales associate. "[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas." *CyberSource*, 654 F.3d at 1371. A method that can be performed by the human mind is too abstract to be patentable. *Id.*

For example, in *Bilski*, the patentee tried to claim a method for hedging risk in the energy market by making investments in different segments of the industry. 130 S. Ct. at 3223. The Court found that the investment strategy embodied a concept and a formula, neither of which are patentable. *Id.* at 3231. The recitation of specific steps will not save an abstract idea from being unpatentable if those steps can be performed by the human mind. *See DealerTrack*, 674 F.3d at 1333. For example, a patent on a method for hedging that relied upon specific, concrete steps did not "impose meaningful limits on the claim's scope"; thus, it was invalid. *Id.* Similarly, a method of verifying credit card transactions over the Internet could not be patented because it could be performed through a mental process of obtaining and using information. *CyberSource*, 564 F.3d at 1376.

All of the steps of the '015 patent could be completed by the human mind. At the very most, a sales associate may need to go to the backroom to check the inventory if he or she does not have that information memorized. The fact that a computer might make the otherwise human process go faster is not inventive. *See BuySAFE*, 2013 WL 3972261 at * 3 ("[T]he patent's process would be performed exactly the same way by a person and by a computer, the only difference being that the computer performs the process significantly faster than a human. Such a process is not patent-eligible."). In fact, the '015 patent claims are more abstract than the patent claims in *CyberSpace*, which involved the verification of credit card information. The '015 patent involves a method for verifying what products are in inventory, a query even less

12

complicated and more easily completed by the human mind. Further, the '015 patent involves no

incomprehensible digital data like *Compression*, but rather a simple, concrete, and readable list

of the product customization options available in inventory. Accordingly, the asserted claims of

the '015 patent amount to nothing more than unpatentable abstract ideas.

### 3.  Asserted Claim 1 Does Not Include Any Inventive Limitations Beyond The Abstract Idea Itself

When a claim incorporates an abstract idea, courts will find patentability only when they

can identify an inventive concept amounting to a "product of human ingenuity" serving as "more

than a trivial appendix to the underlying abstract idea." *CLS Bank Int'l v. Alice Corp.*, 717 F.3d

1269, 1283 (Fed. Cir. 2013) (per curiam) (Lourie, J., concurring and joined by four judges). "[A]

patent may not simply restate laws of nature or abstract ideas (e.g., mathematical formulas, basic

principles of risk management, etc.), or apply them in some rudimentary fashion; instead, the

invention must add some innovative concept to transform the process into an inventive

application of the formula, idea, or law of nature." *OIP Techs.*, 2012 WL 3985118 at \*12; *see

also Mayo*, 132 S. Ct. at 1294 (finding that a patent must contain elements "sufficient to ensure

that the patent in practice amounts to significantly more than a patent upon [an abstract idea]").

In *CLS Bank*, Judge Lourie determined the reduction of settlement risk by trading through third-

party intermediation to be an abstract idea as it is a "disembodied concept." *CLS Bank*, 717 F.3d

at 1286. In addition to this idea, the limitations included using a computer to create, adjust, and

reconcile shadow records. *Id.* "None of those limitations adds anything of substance to the

claim." *Id.*

Claims incorporating abstract ideas might be patentable only if the abstract ideas are

applied in an inventive way to a known structure or process. *Diehr*, 450 U.S. at 187. In *Diehr*,

the patent claimed a previously unknown method for "molding raw, uncured synthetic rubber

into cured precision products," using a mathematical formula to complete some of its several steps by way of a computer. *Id.* at 177. Considering the invention as a whole, the Court concluded that the claim was not "an attempt to patent a mathematical formula, but rather [was] an industrial process for the molding of rubber products," which constituted eligible subject matter. *Id.* at 192-93.

A computer is not a meaningful limitation for an otherwise abstract idea. *E.g., Fort Properties, Inc. v. Am. Master Lease, LLC*, 671 F.3d 1317, 1322–24 (Fed. Cir. 2012) (determining a real estate investment tool used on a computer to be impermissibly abstract). Similarly, a "computer readable medium" limitation is not sufficient to save an impermissible claim. *CyberSource*, 654 F.3d at 1372, 1375 (finding a claim that requires a "computer to execute an algorithm that can be performed entirely in the human mind" is impermissibly abstract). Also, as noted above, a computer's ability to perform a method at speeds quicker than humans is not enough to constitute a meaningful limitation. *Bancorp*, 687 F.3d at 1278-79. *See also BuySAFE*, 2013 WL 3972261 at **2-3 (patent held invalid under § 101 because recited "computer" is used only for processing—"the basic function of any general purpose computer"—and the claims did not require specific programming and were not tied to any particular machine).

Even if limited to one field of application, an abstract idea will be unpatentable. *OIP Techs.*, 2012 WL 3985118 at *12. Although the hedging process in *Bilski* was limited to energy markets, and the hedging process in *DealerTrack* was limited to the car-loan application process, both patents covered a broad idea that could not be patented. *Bilski*, 130 S. Ct. at 3231; *DealerTrack*, 674 F.3d at 1334. Similarly, in *Flook*, the applicant tried to patent a procedure for monitoring conditions during the catalytic conversion process in the petrochemical and oil-

14

refining industries with the only innovation being reliance on a mathematical algorithm. *Parker v. Flook*, 437 U.S. 584, 585–86 (1978). Even though the invention was limited to a certain industry and a "solution for a specific purpose," the Court found no claim of a patentable invention. *Id.* at 594–95.

The '015 patent lacks the requisite "inventive concept" to make it patent eligible. It applies the abstract concept of identifying "customization options" available in inventory and does so in a way that lacks any human ingenuity. There is nothing inventive about identifying "customization options." Instead, the idea is applied in an exceedingly rudimentary fashion: the method involves receiving a query, determining options in inventory, preparing a list of options, and presenting the list. The only additions the claims append to the abstract idea are generic computer-related limitations. As explained above, such limitations do not constitute an inventive application of an otherwise unpatentable abstract idea.

Additionally, the broad use of the claimed process in an apparently limitless group of businesses and industries evidences the lack of any specific inventive limitation on the claimed abstract idea. Based on the companies that have been sued by CWC, the '015 patent's claims are even more broadly applicable than the ineligible claims in *Bilski*, *Dealertrack*, and *Flook*, which were at least limited to specific industries—energy, car loans, and oil refinery, respectively. Here, CWC alleges infringement in these consolidated cases against not only Hugo Boss (clothing and footwear), but also against a widely diverse group of retailers: Dick's Sporting Goods (sports equipment, apparel, and footwear), Mercedes-Benz (luxury cars), Hugo Boss Fashions (athletic apparel and footwear), Tory Burch (women's clothing, shoes, and handbags), Forty Niners Football Co. (49ers gear and merchandise), Helly Hanson (high-tech outdoor apparel), Levi Straus & Co. (denim and other clothing), NFL Enterprises (football jerseys and

15

gear), Spanx (undergarments), and MLB Advanced Media (baseball jerseys and gear).[3] Thus, the asserted scope of the '015 patent is effectively limitless, as indicated by CWC's attempt to apply it to a broad concept that is relied upon by countless businesses in a variety of disparate industries. This limitless application of the alleged invention in the '015 patent to effectively the entire sales industry is made clear on the face of the patent itself. *See* col. 3:37-40 (stating "the present application" is applicable to selling systems "used in an environment where selling products from an existing inventory may be desired").

Because it is directed to the abstract concept of checking the availability of a customizable product and presenting the customer with a list of acceptable products, and contains no inventive limitation or application beyond that simple abstract concept—all of which can be performed manually or in the human mind—the '015 patent is invalid. *See CyberSource*, 654 F.3d at 1372.

 **4. The Asserted Dependent Claims Also Are Unpatentable Because They Do Not Satisfy The Machine-Or-Transformation Test And Are Mere Abstract Ideas**

None of the asserted dependent claims 2-4 and 10-11 are directed to patentable subject matter and are therefore invalid as well. These dependent claims add nothing more than a "user interface" (claims 2, 10, and 11) or a "communication network" such as the Internet (claims 3, 4, 10, and 11).

The claimed "user interface" reflects the basic functionality of any computer. The claims do not require any specific type of programming of a "user interface," nor is the "user interface" tied to any particular machine. The '015 patent also states that the "user interface" performs what

---

[3] Recently, CWC has filed suit in this Court asserting the '015 patent against even more diverse companies, including Crate & Barrel (Case No. 6:13-cv-574), Target Corporation (Case No. 6:13-cv-570), and Buy.com (Case No. 6:13-cv-575). Buy.com pretty much sells everything.

otherwise would be manually performed by the sales representative: "[T]he functions typically performed by the sales representative may be built into the user interface and software running on the remote computers...." '015 patent, col. 4:25-27. Thus, the claimed "list of customization options" could be presented on a piece of paper or spoken by a human being instead of the "user interface," which renders the claim unpatentable. *See CyberSource*, 654 F.3d at 1371-73. Moreover, the fact that the list of customization options might be more quickly presented by a "user interface" instead of manually with a pen and paper does not confer patentability. *Bancorp*, 687 F.3d at 1278-79; *MySpace*, 672 F.3d at 1267; *BuySAFE*, 2013 WL 3972261 at \*\*2-3.

The dependent claims that add a "communication network," or the "Internet" also do not make render the claims patent eligible. *See CyberSource*, 654 F.3d at 1370. *See also BuySAFE*, 2013 WL 3972261 at \*3 (rejecting argument that claims were patentable simply because the claimed process "via a computer network" took place "online" and involved "online transactions"). In addition, the "remote" computers recited in the dependent claims are simply general purpose computers, described generally as a "laptop" or "desktop," for example. *See* '015 patent, col. 18-24. As with the general recitation of being on a "communication network," the use of general purpose "remote" computers on a "communication network" or "Internet" does not confer patentability. *See CyberSource*, 654 F.3d at 1370. *See also BuySAFE*, 2013 WL 3972261 at \*3.

V.   **CONCLUSION**

For the foregoing reasons, pursuant to Rule 12(c), Hugo Boss moves this Court to grant judgment on the pleadings that the '015 patent is invalid on the grounds of ineligible subject matter.

Dated:  August 27, 2013

/s/ John M. Mueller
Harry L. Gillam, Jr. (07921800)
Gillam & Smith
303 S. Washington Avenue
Marshall, TX  75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257
gil@gillamsmithlaw.com

Kevin W. Kirsch (*pro hac vice*)
John M. Mueller (*pro hac vice*)
Baker & Hostetler LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio  45202-4074
Telephone: (513) 929-3499
Facsimile:   (513) 929-0303
kkirsch@bakerlaw.com
jmueller@bakerlaw.com

ATTORNEYS FOR DEFENDANT
HUGO BOSS FASHIONS INC.

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2013, the foregoing document was filed and/or served electronically in compliance with Local Rule CV-5(a).  Counsel who have not consented to electronic service, if any, were served with a true and correct copy of the foregoing document by facsimile transmission and/or first-class mail.


/s/ John M. Mueller
John M. Mueller

1